TIDEWATER ASSOCIATED OIL COMPANY, a corporation, Appellant,

v.

NORTHWEST CASUALTY COMPANY, a corporation, Appellee.

No. 16072.

United States Court of Appeals Ninth Circuit.

March 19, 1959.

Wheelock, Richardson & Niehaus, C. R. Richardson, Portland, Or., for appellant.

Phillips & Sandeberg, W. K. Phillips, Leo Levenson, William C. Ralston, Portland, Or., for appellee.

Before BARNES, HAMLEY, and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

Northwest Casualty Company refused to defend its public liability policyholder, Tidewater Associated Oil Company, against a particular damage claim. It also refused to reimburse Tidewater for the sum paid in compromise settlement of that claim. Tidewater brought this action against the insurance company to recover the sums expended in defending against and settling the claim.

The trial court rendered judgment for defendant. It was held that under an "exclusion of product liability" endorsement attached to the policy the claim in question was excepted from policy coverage. Plaintiff appeals, contending that the damage claim asserted against it was not excluded under the product liability endorsement.

The comprehensive public liability policy was issued to William V. Sherer, a Tidewater gasoline and oil distributor at Bandon, Oregon. By endorsement on the policy appellant was named an insured so far as its interest was concerned. Attached to the policy was an endorsement entitled "Exclusion of Product Liability," which we quote in the margin.[1]

---

[1] This endorsement reads as follows:
"Exclusion of Product Liability
"Exclusions (A) and (B) below are applicable only when checked.
"X (A) Bodily Injury
"It is agreed that the policy does not apply to bodily injury, sickness or disease, including death at any time resulting therefrom.
"X (B) Property Damage
injury to or destruction of property (including loss of use of such property):
if caused by the handling or use of, or the existence of any condition in goods or products manufactured, sold, handled or distributed by the Insured when the occurrence takes place away from the premises owned, rented or controlled by the Insured, and after the Insured has re-

linquished possession of such goods or products to others or if caused by operations if the accident occurs after such operations have been completed or abandoned at the place of occurrence (other than pick up and delivery, and the existence of tools, uninstalled equipment, and abandoned or unused material); provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement.
"Subject, otherwise, to all the terms and conditions of the policy.
"Attached to and hereby made a part of policy No. ............ of the Northwest Casualty Company, of Seattle, Washington."

While this policy was in effect, Mrs. Ruth Buffington, who resided near Bandon, ordered stove oil from Sherer. For the purpose of filling this order, a truck was driven to the Buffington residence. The oil was to be placed in a storage tank attached to the outside of the house. Mrs. Buffington requested, however, that the truck driver first fill with stove oil a small can she kept on the back porch. This can of oil was used for starting fires in the kitchen stove.

The truck was divided into compartments, one of which contained stove oil, another contained regular gasoline, and the third contained ethyl gasoline. The truck was equipped with one hose to serve all three compartments. The driver took this hose and filled the small can. Immediately prior to this the driver had used the hose to deliver gasoline.

The next morning Mrs. Buffington used the small can to start a fire in the kitchen stove. She was severely burned when the can exploded and enveloped her in flames. The stove oil in this can was apparently contaminated with gasoline.

Mrs. Buffington later brought suit against appellant and others to recover damages in excess of $100,000. Two causes of action were stated in her complaint, one based on negligence and the other on breach of implied warranty.

Tidewater tendered the defense of this suit to Northwest Casualty Company. The latter denied liability under the policy and refused to defend. Appellant, through its excess coverage insurer, Continental Casualty Company, thereupon undertook to defend the action. Prior to the trial the action was compromised and settled for the sum of $15,000. Appellant expended the sum of $750 in attorney's fees and $260.73 in costs. In the instant action against Northwest Casu-alty Company, appellant seeks recovery of these sums.

The first question which we must decide is whether on these facts the insurance company was obligated to assume the defense of appellant against the Buffington suit.

Under the policy in question Northwest Casualty Company agreed to defend the insured against suits for damages "even if such suit is groundless, false or fraudulent," but only "as respects such insurance as is afforded by the other terms of this policy. * * " It is therefore necessary to determine whether by any reasonable intendment of the Buffington complaint, and regardless of ultimate merit, liability of a kind covered by the policy could be inferred. See Boutwell v. Employers' Liability Assur. Corp., 5 Cir., 175 F.2d 597, 600. If so, appellee was obligated to defend.

The kinds of liability covered by the policy are set out in the general insuring agreements,[2] with the "exclusion of product liability" endorsement operating as an exception thereto. Appellant argues that three of the four negligence allegations of the Buffington complaint state bases of liability within the general insuring agreements and not excepted therefrom by the "exclusion of product liability" endorsement.

These allegations of negligence are: (1) Use of a hose which contained gasoline left therein after the immediately preceding gasoline delivery; (2) failure to remove gasoline from the hose by filling the residential storage tank with stove oil before undertaking to fill the small can; and (3) failure to have and maintain on the truck a separate hose to be used exclusively for stove oil. Appellant contends that these allegations of negligence are directed to the use of

2. "Insuring Agreements

"1. To pay on behalf of the Insured, all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under any warranty of goods or products, or any written contract:

"(a) for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained or alleged to have been sustained by any person or persons * * *."

faulty equipment or the negligence of the truck driver and do not pertain to a product of the insured or a defect in a product manufactured by the insured.

The injuries sustained by Mrs. Buffington were caused when she started a fire in the kitchen stove with what she believed to be stove oil but which was actually part or all gasoline. The injuries were thus caused by the "handling or use of, or the existence of * * * [a] condition in" the stove oil, as those words are used in the exclusion endorsement.

The stove oil was sold to Mrs. Buffington by Tidewater's agent and was therefore a "product" as that term is used in the endorsement.

The explosion which caused the injuries was an "occurrence." This occurrence took place in the kitchen of the Buffington home, and therefore "away from the premises owned, rented, or controlled by the Insured."

This occurrence took place on the day following the delivery of the product to Mrs. Buffington. It therefore took place "after the Insured * * * [had] relinquished possession of such goods or products to others."

It accordingly appears that each and every circumstance necessary to give application to that part of the exclusion endorsement which relates to products is alleged in the Buffington complaint.

The fact that in addition to these circumstances the complaint alleges that faulty equipment was used or that the truck driver was negligent in certain respects in no sense negatives application of the exclusion endorsement otherwise established. In practically every case in which injury or damage is caused by the handling or use of a product, or by a defective condition in such product, the occurrence causing the injury or damage can be traced to some pre-existing negligence. Indeed, were this not so the injured person would have no basis for a tort claim against the insured. Thus, if the allegation of pre-existing negligence were to be regarded as controlling, the result would be to emasculate the product liability exclusion.

Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co., 8 Cir., 214 F.2d 418, cited by appellant, is distinguishable on the facts. In that case the handling or use of the product (coal) away from the premises after the insured had relinquished possession, or the condition of the product, had nothing to do with the accident which caused the injuries. Instead, the accident resulted from the insured's negligent use of a defective railroad car. In our case, on the contrary, whatever pre-existing negligence may have occurred, the immediate cause of the accident was the handling and use of the insured's contaminated product away from the insured's premises and after the insured had relinquished possession.

Philadelphia Fire & Marine Insurance Co. v. City of Grandview, 42 Wash.2d 357, 255 P.2d 540, and Heyward v. American Casualty Co., D.C., 129 F.Supp. 4, are distinguishable on the same ground. In neither case was the injury or accident connected with the handling or use of a product by persons other than the insured, or connected with any condition of such product.

But if it should be assumed, as appellant contends, that the "cause" of this accident within the meaning of the endorsement was the use of faulty equipment or some other negligence by the truck driver, we nevertheless conclude that there is no policy coverage.

It is true that under this assumption no exclusion would be effected under the first part of the endorsement relating to products, since the "cause" would not have taken place "after the Insured had relinquished possession of such goods or products * * *." However, the accident would still be excluded under the last part of the endorsement, which pertains to "operations." It will be noted that under this latter provision an accident caused by "operations" is excluded from policy coverage if the accident occurs after the operations have been completed or abandoned at the place of occurrence.

The acts of the truck driver in filling the oil can and delivering it to Mrs. Buffington were "operations" as that word is used in the endorsement. The accident occurred after these "operations" had been "completed." [3] It was therefore expressly excluded from coverage under the last part of the exclusion endorsement.

For the reasons indicated we are of the opinion that the trial court was correct in holding that appellee was not obligated to defend Tidewater against the Buffington suit. This being the case, appellee was likewise under no obligation to reimburse Tidewater for the sum paid in settlement of that action.

Affirmed.

3. The closing words of the endorsement negative any possible contention that the operations had not been "completed" because they had been negligently performed.