**L. M. ORCHARD, M. R. Orchard and Donald L. Orchard, doing business as Orchard Auto Parts Co., Plaintiffs,**

v.

**AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, a corporation, Defendant.**

Civ. No. 64–88.

United States District Court
D. Oregon.

April 20, 1964.

Thomas E. Brownhill, Riddlesbarger, Pederson, Brownhill & Ingerson, Eugene, Or., for plaintiffs.

Robert T. Mautz and Roland F. Banks, Jr., Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

EAST, District Judge.

It appears from the complaint that the plaintiffs L. M. Orchard, M. R. Orchard and Donald L. Orchard were and are engaged in the wholesale and retail auto-parts sales business in Eugene, Oregon, under the firm name and style of Orchard Auto Parts Co. (Orchard), and while so engaged, one of their employees, through his own mischance, caused to be delivered to an auto mechanic a rear-axle bearing for a 1955–

56 Chevrolet, when in fact a rear-axle bearing for a 1957 Chevrolet had been required and ordered. The purchasing mechanic, while off the premises of Orchard, installed this sound, but improper, bearing, on June 27, 1962, in a 1957 Chevrolet owned by Shirley J. McGillvrey and Richard J. McGillvrey. Thereafter, on the same day the McGillvrey vehicle, while being operated on the highway, rammed the rear of a vehicle driven by Sheridan M. Hills, the impact of which threw the Hills' vehicle into the path of an oncoming truck and collision therewith. Sheridan M. Hills sustained injuries as a result of the collision from which he succumbed.

Lorraine E. Hills, decedent's widow, brought an action against the purchasing and installing auto mechanic, the owner of the truck, the drivers of the truck and McGillvrey vehicle and Orchard. The jury returned a verdict in favor of decedent's estate against Orchard only, and judgment was entered against Orchard for $25,000.00 and costs.

Orchard also alleges in its complaint that a second action was filed against them and the other defendants by a passenger in the Hills' vehicle who had sustained injuries and that Orchard has now incurred costs and expenses in defending that action in a sum more than $4,000.00.

Orchard further alleges that at all pertinent times it was covered by a public liability insurance policy issued by the defendant insurance company and that the defendant, upon notice and demand, had refused to defend Orchard in either of the causes of action filed against Orchard or to pay the judgment or expenses sustained by Orchard. Wherefore, Orchard, in this removed action, seeks a declaratory judgment of coverage under the public liability policy and resultant liability on the part of the defendant for Orchard's losses arising from the incidents recited.

The defendant has now moved for an order of dismissal of Orchard's complaint and action on the grounds that the complaint fails to state facts sufficient to constitute a cause of action or any facts upon which this Court can grant relief.

It appears from the insurance policy, as pleaded by Orchard, under the title of Insuring Agreements, the following:

"COVERAGE B. PERSONAL INJURY LIABILITY—EXCEPT AUTOMOBILE. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury, including death at any time resulting therefrom sustained by any person and caused by an *occurrence* as defined herein." [Emphasis added.]

Further, that this broad coverage is limited by the following exclusion:

"THIS POLICY DOES NOT APPLY:

(a) to liability assumed by the insured under any contract or agreement except under Coverages B and D, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products; * * *"

Turning now to the "Definition" section of the policy, as pleaded, we are advised:

"(i) OCCURRENCE. The word 'occurrence' as used in this policy shall mean either an accident or a continuous or repeated exposure to conditions which result during the policy period in personal injury, including death at any time resulting therefrom, or injury to or destruction of tangible property, including the loss of use thereof, which is accidentally caused."

"(a) CONTRACT. The word 'contract' means a warranty of goods or products, or, if in writing, any contract or agreement of the named insured."

"(g) PRODUCTS—COMPLETED OPERATIONS HAZARD. The term 'products hazard' means (1) Goods or products manufac-

tured, sold, handled or distributed by the named insured or by others trading under his name, if the occurrence happens after possession of such goods or products has been relinquished to others by the named insured * * * and if such occurrence happens away from premises owned, rented or controlled by the named insured, * * * "

"(2) Operations, if the occurrence happens after such operations have been completed or abandoned and happens away from premises owned, rented or controlled by the named insured; provided—operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to agreement; * * * "

Generally, then, under these provisions it is manifest that the policy intends to insure the insured (Orchard) against liability arising out of an accident happening away from the place of business of the insured and caused by either "goods or products manufactured, sold, handled or distributed by the named insured" or "operations" of the insured's business which have been completed. However, this policy contains an endorsement which reads as follows:

"ENDORSEMENT ELIMINATING COVERAGE WITH RESPECT TO PRODUCTS AND COMPLETED OPERATIONS.

In consideration of the reduced premium at which this policy is written, it is agreed that the coverage does not apply to Products Liability or to a Warranty of Goods or Products in accordance with the Definitions of 'Products Hazard' and of 'contract' mentioned in Condition 3."

Here it is to be noted that the subject title "Contract" appears only once under the "Definitions" under "Conditions" of the insurance policy, that being "Definitions (a) Contract" and that the only place in which the words "Products Hazard" appear under the Definitions of the policy is within

"(g) PRODUCTS—COMPLETED OPERATIONS HAZARD" quoted as above—

"The term 'products hazard' means
(1) Goods or products manufactured, * * *
(2) Operations, if the occurrence happens * * * * "

Defendant contends that it has no obligation under the policy to reimburse plaintiff for the amount incurred as a result of the accident caused by supplying the wrong rear-axle bearing, because liability for such an accident is specifically excluded from coverage by the above endorsement.

Orchard contends and theorizes that in restricting the endorsement to "Products Liability," as defined in "Products Hazard," the insurer-defendant has not excluded "COMPLETED OPERATIONS," but only liability arising out of products in and of themselves defective under subdivision (1) of (g). And further, that the accident in question was not the result of a defective product, but of the act of supplying a good but wrong part, which was done as an "operation" of the business.

This theory rests on the unwarranted assumption that the term "Products Liability" is a restricted one. Specifically, that it is restricted to types of liability arising solely out of defects in goods or products, and does not apply to business operations relative to the distribution, installation, or servicing of those goods.

2 Hursh, American Law of Products Liability 115, § 11:9 (1961), has this to say in this area:

"Products liability exclusionary provisions commonly relieve the insurer of liability for losses occurring 'after the completion of such operations,' 'after such operations have been completed or abandoned,' or the like." [Emphasis added.]

Subsection (2) of the Definition of "Products Hazard" is a "completed op-

erations" clause as referred to by Hursh. Orchard counters that subsection (2) is inconsistent with the general term "products liability," and for this misconception Orchard's case falls. The term "products liability," by itself, neither rebuts nor supports the conclusion that the parties intended to exclude or include a "completed operations" clause within the endorsement.

Two features of the endorsement indicate conclusively and independently that the parties intended to exclude "completed operations" coverage from the policy:

(1) The language of the exclusionary endorsement in no way limits the inclusion of the definition of "Products Hazard" to just the first subsection of that Definition.

(2) Assuming, but not deciding, that the language of the body of the endorsement may be ambiguous as to whether the parties intended that the insured should be relieved of losses occurring after the operation was completed, the caption of the endorsement conclusively settles the matter in favor of the insurer.

While a caption in a subject matter or to a clause or provision of a contract may not be used to contradict the clear language of the text of the clause or provision, when there is doubt or ambiguity within the language of the body of the contract, then resort may and should be had to the caption to determine the intent of the parties. Provident Life & Accident Ins. Co. v. Anderson, 166 F.2d 492 (4th Cir. 1948).

The subject-matter caption of the endorsement in question reads as follows:

"ENDORSEMENT ELIMINATING COVERAGE WITH RESPECT TO PRODUCTS AND COMPLETED OPERATIONS."

This language clearly indicates an intent on the part of the writer of the policy to eliminate "completed operations" coverage by the endorsement.

"The caption of a policy is also a part of it, and should be construed with the detailed provisions. The caption should not, of itself, be taken to override the intention of the parties as shown by the provisions and clauses inserted therein, but may be read in connection with such clauses in determining the intention of the parties." 13 Appleman, Insurance Law and Practice ———, § 7387 (1943).

Orchard suggests that the language of an insurance policy should be liberally construed in favor of the insured. This is relatively so, but not to the discard of the intention of the parties. For a recent case under almost identical facts, this Court, speaking through Kilkenny, J., had this to say in that regard:

"The rule that language in an insurance policy should be liberally construed in favor of the insured must be considered in the light of other rules of construction and in particular in the light of the rule that such contract should be construed so as to ascertain and declare the true intention of the parties." Waterman S.S. Corp. v. Snow, 222 F.Supp. 892, 896 (D.Or.1963).

So, here, when the pertinent language of the policy is considered as a whole, the intent of the parties is reflected too clearly to be susceptible to any different, whether liberal or not, construction favoring the contentions of Orchard. Accordingly, the motion to dismiss Orchard's complaint and the action thereunder should be granted.

Counsel for the defendant may submit proposed order of dismissal and judgment in favor of the defendant.