**KETONA CHEMICAL CORPORATION,**
Appellant,

v.

**GLOBE INDEMNITY COMPANY,**
Appellee.

No. 25183.

United States Court of Appeals
Fifth Circuit.

Nov. 25, 1968.

Rehearing Denied March 7, 1969.

Joseph S. Mead, Mead, Norman & Fitzpatrick, Birmingham, Ala., for appellant.

James E. Clark, London, Yancey, Clark & Allen, Birmingham, Ala., for appellee.

Before TUTTLE and SIMPSON, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge:

This diversity suit is based upon a Comprehensive General Liability Policy issued by defendant, Globe Indemnity Company, to appellant, Ketona Chemical Corporation. The primary issue concerns whether liability of Ketona for the accident in question is excluded from coverage by the "Products Hazard" exclusionary endorsement to the policy. The district court so held, in directing a verdict for the insurer at the close of plaintiff's evidence. We are of the opinion that such action was correct.

Ketona is a Delaware corporation jointly owned by Alabama By-Products Corporation and Hercules Powder Company. At its plant located at Tarrant City, Alabama, Ketona manufactures agricultural chemicals which it ships to purchasers in railroad tank cars leased from Union Tank Car Company.

On January 1, 1961, employees at the Ketona premises loaded a tank car with a quantity of anhydrous ammonia solution for shipment to a purchaser, Home Guano Company, to be used in the manufacture of fertilizer. The tank car was sub-leased to Home Guano, and, upon arrival at its plant in Dothan, Alabama, the car was located on a sidetrack and used as a storage receptacle. The chemical was unloaded from it, as needed, by means of pipes attached to valves in the dome of the car. On January 26, 1961, after the chemical had been unloaded and the pipes removed, Raymond

Strickland, an employee of Home Guano, climbed on top of the car to remove a bushing which remained in the valve outlet. In attempting to unscrew the bushing the employee's hand struck the valve handle, causing the valve to open. Pressurized residual fumes spewed out into his face, severely injuring him and causing permanent blindness.

Strickland later brought suit in an Alabama state court against Union Tank Car Company, Ketona and Alabama By-Products Company to recover damages for his personal injuries.[1] As summarized in appellant's brief, Strickland's allegations in his complaint in the personal injury action were as follows:

"(1) Union Tank Car was negligent in furnishing the valve and, with Ketona, was negligent as to its installation with the handle in an improper and dangerous position.

"(2) Union Tank Car was negligent in leasing the car to Ketona in its unsafe condition for use in the delivery of its products.

"(3) Ketona was negligent in allowing a car 'that was not reasonably safe for reasonable use for the plaintiff' to be loaded with chemicals and furnished to plaintiff's employer for use by the plaintiff 'while in such unsafe condition for reasonable use'.

"(4) Both Union Tank Car and Ketona breached the implied warranty as to the fitness of the car for the purpose for which it was to be used in the delivery of products of a nature potentially dangerous to the eyes and respiratory system of anyone coming in contact with it."

Specifically, Strickland contended that the valve lever should have lain flat against the top of the car when the valve was closed; but that, instead, it was in an upright position when closed, thereby creating a dangerous condition in that it indicated to a workman that the valve was then open, and the tank car empty and thus safe to work around.

Under the liability policy in force at the time of the accident, Globe denied liability and declined to defend Ketona, and Ketona hired lawyers to defend it. The suit was ultimately settled for $125,000. Half of that amount was paid by Ketona and half by Union Tank Car Company. Ketona now seeks recovery of the amounts expended by it in the defense and settlement of the claim.

A major portion of appellee's brief is devoted to the argument that Underwriters at Lloyds, London is the real party in interest in this suit, but, that under the Alabama Unauthorized Insurers' Act it cannot maintain this suit; and hence, error by the District Court, if any, was harmless.

The record shows that subsequent to purchasing the policy in question from Globe, Ketona obtained excess coverage from Lloyds, including products liability coverage, with limits up to $1,000,000.00. Ketona was self-insured for the first $10,000.00. Through a "loan receipt" transaction, Lloyds furnished the defense in the suit and paid Ketona's half of the settlement with Strickland, less Ketona's $10,000.00 self-insurance.

Globe objects to this arrangement on the ground that Lloyds is an unauthorized insurer under the Alabama Unauthorized Insurer's Act, Title 28, Alabama Code, Section 417(1) et seq., since it is not qualified to do business in Alabama under Section 417(6) of that Act; and, thus, that it may not file, institute or cause to be filed in Alabama courts any suit based upon an insurance transaction.[2] Globe claims that the loan receipt

1. Three other defendants, General Tank and Manufacturing Co., Louisville and Nashville Railroad Co., and Atlantic Coast Line Railroad Co., were dismissed from the suit.

2. "(1) No unauthorized insurer shall institute or file, or cause to be instituted or filed, any suit, action or proceeding in this state to enforce any right, claim or demand arising out of any insurance

device has been condemned by Alabama courts and is being used here as a subterfuge to circumvent the Unauthorized Insurers' Act.

We hold that under Rule 17(a), F.R.Civ.P., Ketona is the real party in interest and the proper party plaintiff. Sanders v. Liberty Mutual Ins. Co., 5 Cir., 354 F.2d 777 (1965). See 18 Crouch on Ins., Section 61.72; 13 A.L.R.3d 42. The single Alabama case which has dealt with the question of the validity of a loan receipt transaction is McKenzie v. North River Ins. Co., 257 Ala. 265, 58 So.2d 581 (1951), and it is not in point. Nor is Lloyds circumventing the Unauthorized Insurer's Act in any way through its use of the loan receipt device. Since the protection it afforded to Ketona is excess coverage, it is exempted from the Act by Section 417(6) (2) (b) as Surplus Lines Coverage, as designated in Section 417 (7) of the Act.[3]

Under the policy on which this suit is based, coverage was provided for bodily injury and property damage liability. As pertinent here, Globe agreed as follows:

"1. Coverage A:—BODILY IN-JURY LIABILITY

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident." ("Occurrence" was substituted for "accident" by endorsement).

Description of hazards listed (a) Premises Operations; (b) Elevators; (c) Independent Contractors; and (d) Contracts as listed in an extension schedule (not relevant here) and contractual liability coverage endorsements Nos. 1 and 2. "Products Hazard (Including Completed Operations)" was marked excluded and no premium was paid therefor. By Endorsement No. 5, it was agreed that:

"1. The policy does not apply to the Products Hazard as defined therein.

"2. The word 'operations' as used in the Products Hazard includes any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere whether cr not goods or products are involved in such operations."

Under Condition 3, Definitions, the "Products Hazard" was defined in these terms:

"(c) PRODUCTS HAZARD The term 'products hazard' means

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other

---

transaction in this state, until such insurer has obtained a certificate of authority to transact such insurance in this state."

"(2) This section does not apply as to:

*      *      *      *      *

"(b) Surplus line coverages written under this chapter." 28 Ala.Code, Section 417(6).

3. " *   *   * If certain insurance coverages cannot be procured from authorized insurers such coverages, hereinafter des-

ignated as 'surplus lines' may be procured from unauthorized insurers subject to the following conditions:

*      *      *      *      *

"(2) The full amount required must not be procurable, after diligent effort has been made to do so, from among the insurers authorized to transact and actually transacting that kind and class of insurance in this state, or has been procured to the full extent such insurers are willing to insure." 28 Ala.Code, Section 417(7) (1).

than such container, rented to or located for use of others but not sold;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

Ketona contends that Strickland's accident arose out of ordinary business operations because of the use of a tank car in an unsafe condition for the delivery of its products, and that the product itself or any negligence connected with it was not the cause of the accident. It argues that the tank car was not a container but, rather, a "vehicle" and that it was "property rented to or located for use of others but not sold" and therefore excepted from the exclusion under paragraph (1) of the definition of the products hazard.

With respect to paragraph (2) of the definition, Ketona contends that the operation of delivery had not been completed or abandoned, and, further, that the accident actually arose out of faulty maintenance of vehicles owned or used by the named insured and was thus exempted from that portion of the exclusion.

The insurer primarily contends that the accident was clearly excluded since, whether or not it was the cause, a product of the insured was involved in the accident, and, further, that if the tank car is to be considered a vehicle, as alleged by the insured, then it must also be considered a "trailer" and, therefore, an "automobile" within the following provision listed under policy exclusions:

"(c) * * * the ownership, maintenance, operation, use, loading or unloading of * * * (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining * * *."

Under Condition 3, Definitions, "automobile" is defined as meaning a "land motor vehicle, trailer or semitrailer."

■■■ "Accident" has been defined to be an "unexpected untoward event which happens without intention or design." A "hazard" is the source from which an accident may arise, or "a danger or risk lurking in a situation which by chance or fortuity develops into an active agency of harm". Hough v. Contributory Retirement Appeal Board, 309 Mass. 534, 36 N.E.2d 415, 417, 418, cited in Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co., 8 Cir., 214 F.2d 418, 423 (1954). The policy excludes neither accidents nor hazards, within themselves. Service Welding & Machine Co. v. Michigan Mutual Liability Co. of Detroit, 6 Cir., 311 F.2d 612, 618 (1962). Rather, it excludes liability for loss from accidents caused by certain hazards, namely dangers lurking in products and completed operations, and only when they occur away from the premises of the insured.

■■■ The accident here was the striking of the valve lever and the consequent release of chemical into the face of Strickland. Whether liability for the loss is covered by the policy must be determined by looking to the claim in the damage suit against the insured. U. S. Sanitary Specialties v. Globe Indemnity Co., 7 Cir., 204 F.2d 774, 777 (1953); Boutwell v. Employers' Liability Assur. Corp., 5 Cir., 175 F.2d 597, 599 (1949). Strickland's complaint predicated liability of Ketona upon its negligence in loading the chemical into a defective tank car. This action by Ketona through its employees constituted "delivery" onto a railroad car and was thus an "operation". It had been completed

when the accident occurred away from the premises, and out of it the accident arose. The tank car was a "railroad car" and was thus not within the exception of pick-up or delivery.

■ If there is ambiguity in an insurance contract, it must be construed most favorably to the insured and against the insurer. Employers Ins. Co. v. Rives, 38 Ala.App. 411, 87 So.2d 646 (1953); Cook v. Continental Ins. Co., 220 Ala. 162, 164, 124 So. 239, 242 (1928), 65 A.L.R. 921. However, the policy must be construed to effectuate the intention of the parties; and where that intention is clear, the policy will be enforced accordingly. Loveman, Joseph and Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7 (1937). There is no ambiguity in this instance, and the Court has no alternative but to enforce the policy terms. Liability is clearly excluded by the completed operations aspect of the Products Hazard exclusion. It follows that there is no need to discuss the arguments dealing with the other exclusionary provisions in the policy.

An additional claim is made by Ketona for $5,000.00, based upon Contractual Liability Endorsement No. 2. Under the exclusions listed in the policy, it was provided that the policy did not apply: "(a) to liability assumed by the insured under any contract or agreement except (1) a contract as defined herein * * *" Under the endorsement, Globe agreed to pay to Ketona or on its behalf all sums which the insured should become legally obligated to pay by reason of liability assumed by it under a contract with Alabama By-Products Company dated January 1, 1956.

The contract is entitled "Sales and Administrative Services Agreement." By its terms Alabama By-Products agreed to become the exclusive sales agent for Ketona, to furnish administrative assistance and to be responsible for the sales of the products of Ketona; but it did not assume liability for the following:

"* * * to Ketona or to third parties for the shipment of orders, for delays in or failure to fill orders, for losses in transit, commodity damage, the quality or character of any products shipped, the credit or failure of credit of any purchaser, or for any damage or liability in any way arising out of the filling or servicing or failure to fill or service any order or shipment, and Ketona agrees to and does hereby indemnify and hold A B C harmless with respect to all of the foregoing."

Ketona points out that Alabama By-Products was sued by Strickland as a co-defendant with Ketona. It contends that a demand was made upon Globe to defend both companies, that Globe refused to defend and that both companies then hired attorneys to defend them. Ketona further alleges that Alabama By-Products paid $3,041.69 for its defense and that it now claims this sum from Ketona under the indemnity agreement.

This issue was included in the district court's directed verdict in favor of defendant Globe, for the reason that the court felt that plaintiff had failed to establish that a demand had been made upon Globe with respect to this claim. Globe asserts that this holding is correct and urges, as an additional reason for upholding the action of the district court, that the subject matter of the contract was unrelated to the accident.

■ In reviewing the granting or denial of a motion for a directed verdict under Rule 50(a), F.R.Civ.P., the evidence must be viewed in the light most favorable to the party against whom the motion was made. Hogan v. United States, 5 Cir., 325 F.2d 276, 277 (1963), and cases cited therein. The testimony shows that Alabama By-Products was insured by St. Paul Mercury Insurance Company, which furnished the defense in the damage suit, and that St. Paul has not paid these expenses. It takes the position that Ketona should pay them under the indemnity agreement.

A letter of April 30, 1962, received by Ketona's attorneys from the firm representing Globe, reads partly as follows:

"* * * You have heretofore on behalf of Ketona Chemical Corporation

and Alabama By-Products Corporation made demand that Globe Indemnity Company defend said concerns in the above captioned suit and pay for any liability adjudicated against them as the responsibility of the insurer under its policy * * * On behalf of Globe Indemnity Company we have heretofore declined to defend the suit in caption, or to concede that the matters and things complained of therein are insured under the policy of Ketona Chemical Corporation with the Globe Indemnity Company.

"A thorough review has been made of the entire underwriting file of Globe Indemnity Company in this matter dating back several years, and without limiting the denial of coverage to the following grounds, we do wish on behalf of Globe as a courtesy to you and your clients to make the following observations relating to its disclaimer:

* * * * * *

"With reference to your demand on behalf of Alabama By-Products Corporation for a defense and payment of any judgment by Globe in the above captioned suit, please be advised that under the policy in question Globe insures only Ketona Chemical Corporation's liability to Alabama By-Products under a Sales and Administration Services Agreement which refers to matters altogether separate and distinct from those involved in the accident made the basis of the suit in question. We do not feel under the present state of the pleadings that Ketona is under any legal obligation to Alabama By-Products as a result of the agreement mentioned, or for that matter as a result of the occurrence sued upon."

The demand letters from Ketona to Globe were not introduced into evidence. Even when the April 30th letter is viewed in the light most strongly favorable to Ketona, the most that may be inferred from it is that Ketona did make a general demand on behalf of Alabama By-Products but that Globe,

itself, mentioned the contract in making its "observations". This evidence is not of such character that more than one reasonable conclusion can be reached from it. We cannot say that the district court erred in directing a verdict for the insurer.

The judgment is affirmed.