[Civ. No. 1074.   Fifth Dist.   Sept. 3, 1969.]

KEVIN JOHN McGINNIS, a Minor, etc., et al., Plaintiffs and Respondents, v. FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant and Appellant.

McGregor, Bullen & McKone and Joe W. Keller for Defendant and Appellant.

Downey, Brand, Seymour & Rohwer and Robert R. Harlan for Plaintiffs and Respondents.

STONE, P. J.—Nelson Piper operated a retail store in Sacramento, under the name "Piper's Ammunition and Guns," dealing in ammunition, guns and related products. On May 12, 1962, in the course of his retail trade, he sold a can of black gunpowder to respondent Kevin John McGinnis and Theo Holstein. Both boys were 15 years old at the time of the sale. They took the gunpowder to Theo's home and on May 19, 1962, a portion of the powder exploded in Kevin's right hand, seriously and permanently injuring him. His mother, as his guardian ad litem, brought an action for damages on his behalf and for herself, individually, against Piper and Theodore Holstein, Theo's father.

Piper notified appellant herein of the action and demanded that appellant insurance company defend him according to the terms of his liability policy of insurance. Appellant disclaimed liability upon the ground the policy coverage paid for by Piper did not include accidents occurring off the premises. Piper retained private counsel to defend the action. In a nonjury trial the court found that Piper was negligent in selling the gunpowder to Kevin, a violation of Health and Safety Code sections 12101.5 and 12000, and that Kevin's injuries were the direct and proximate result of Piper's negligence. A judgment against Piper in the sum of $22,254.44 was entered.

Piper, as the insured under the policy of liability insurance issued by appellant, assigned his claim of coverage under the policy to respondents herein. They brought this action on the policy to recover the amount of damages awarded against Piper in the prior action. As assignee of Piper's rights, respondents recovered judgment against appellant for the unpaid balance due under the Piper judgment.

The basic question is whether the Owners', Landlords' and Tenants' Schedule of the liability policy issued by appellant to Piper covered the hazard which gave rise to the injuries to the minor, Kevin John McGinnis, upon which the judgment against Piper was based.

By the general liability provision of the policy, appellant agreed: ''To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.''

The general clause, as in most liability policies, then catalogued a list of defined specific hazards. The one pertinent to the case at bench reads: ''Division 1—Premises—Operations. The ownership, maintenance or use of the premises, and all operations necessary or incidental thereto.''

However, the general ''Premises—Operations'' coverage was followed by a limiting clause which defined a particular kind of ''Premises—Operations'' liability that was not covered unless an additional premium was paid. This specific coverage for which Piper did not pay a premium is defined as follows: ''Division 4—Products—Completed Operations.

'' (1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured. . . .''

One would be hard put to express a ''products liability'' exclusion more clearly than does the foregoing clause upon which appellant relies. Since Piper paid no premium for such coverage, the first question that emerges is whether the accident in this case comes within the doctrine of products liability and, a fortiori, within the exclusion.

The storekeeper in a products liability case is usually an innocent link in the chain of distribution who unknowingly sells a defective product. His liability does not stem from culpability; it is imposed by law as a matter of expedience. (*Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049] ; *Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168] ; Prosser, *Strict Liability to the Consumer in California* (1966) 18 Hastings L.J. 9, at p. 27.) The injury, here, was not caused by a defective product. The powder did exactly what it was designed to do, and what everyone expected it to do ; it exploded when detonated. Consequently this is not a products liability case because no negligence can be attributed

to the manufacturer. Stated another way, Piper was not an innocent link in the chain of distribution; he was negligent in selling to the minor, and his negligence was a proximate cause of the accident.

Having concluded that this is not a products liability case, we turn to appellant's contention that even though the insured's negligence in selling gunpowder to a 15-year-old boy, contrary to law, occurred on the premises, the injury occurred away from the premises and is not covered because of the exclusionary language, "accident occurs . . . away from the premises."

Appellant's agent, who sold the policy, said that in explaining the scope of the exclusion he defined the general legal principles governing the doctrine of products liability. In response to the explanation, Piper said he could recover from the manufacturer under such circumstances, so that he would not need products liability coverage. To Piper and the agent the clause excluded accidents away from the store caused by defective goods "sold, handled or distributed" by the insured. The agent did not discuss the clause in the light of an injury resulting from Piper's negligence; as between them the contemplated liability to be excluded was that imposed upon a storekeeper as a matter of law should he sell a defective product to a consumer.

We learn from *Insurance Co. of North America* v. *Electronic Purification Co.*, 67 Cal.2d 679 [63 Cal.Rptr. 382, 433 P.2d 174], that an exclusionary clause in a contract of insurance must be interpreted in the light of the objective that the insured and the company agent intended to accomplish by the use of such language. The following appears at page 688: ". . . courts have looked at all the relevant circumstances, including the disclosed nature of the business of the insured, to determine the nature of the exclusion. In so doing they follow the general principle that they should not interpret the provision 'to remove from the coverage of the policy a risk against which the circumstances under which and the purposes for which the policy was written indicate the insured intended to protect himself. . . .' [Citation.]" (See discussion in *Steven* v. *Fidelity & Cas. Co.*, 58 Cal.2d 862, 879 et seq. [27 Cal.Rptr. 172, 377 P.2d 284].)

Applying the foregoing principle to the case at bench, it seems clear that the agent and Piper both understood the coverage to exclude accidents occurring away from the premises because of a defect in the product. Since the injury to

Kevin resulted from Piper's negligence, his liability is not excluded from the coverage afforded by the policy.

The judgment is affirmed.

Gargano, J., concurred.

A petition for a rehearing was denied October 2, 1969, and appellant's petition for a hearing by the Supreme Court was denied October 29, 1969.