57 P.3d 765

**POTLATCH GRAIN AND SEED, an Idaho Corporation, Plaintiff–Appellant,**

v.

**MILLERS MUTUAL FIRE INSURANCE COMPANY, Defendant–Respondent.**

No. 28129.

Supreme Court of Idaho, Lewiston, October 2002 Term.

Oct. 23, 2002.

Mark S. Moorer, Moscow, for appellant.

Etter, McMahon, Lamberson & Clary, P.C., Spokane, Washington, for respondent. Stephen M. Lamberson argued.

EISMANN, Justice.

We affirm the district court's grant of summary judgment dismissing the complaint on the ground that the insurance policy issued by respondent had expired prior to appellant's loss.

## I. FACTS AND PROCEDURAL HISTORY

Beginning in the early 1990's, the appellant Potlatch Grain and Seed (Potlatch Grain) purchased annual policies of property and casualty insurance from the respondent Millers Mutual Fire Insurance Company (Millers). In July 1997, Potlatch Grain renewed its insurance policy with Millers for a one-year term ending July 29, 1998. Millers renewed that policy through Millers' agent McDonald Insurance.

Sometime prior to January 6, 1998, Millers terminated its agency relationship with McDonald Insurance. On July 16, 1998, McDonald Insurance sent a letter to Potlatch Grain informing it that its Millers insurance policy would expire on July 29, 1998; that McDonald Insurance was no longer an agent for Millers; and that Potlatch Grain may desire to find a Millers agent closer to Potlatch Grain.[1] There is nothing in the record indicating that Millers authorized McDonald Insurance to send that letter.

In April 1998, Potlatch Grain authorized its local agent Guilfoy Insurance to shop for property and casualty insurance to cover the same property insured under the Millers policy. In early July, Potlatch Grain received a bid from Guilfoy Insurance for a policy of property and casualty insurance from American West Insurance (American West). On July 14, 1998, Potlatch Grain authorized Guilfoy Insurance to purchase coverage through American West, which Guilfoy Insurance did. The American West policy provided the same coverage as the Millers policy and commenced on July 29, 1998, the day the Millers policy expired.

On August 5, 1998, Potlatch Grain had a fire in its crib warehouse and storage tanks. Potlatch Grain initially thought that the American West policy might not be in force because it had not yet negotiated payment terms with American West. Potlatch Grain submitted a proof of loss to American West, and it paid its policy limits. Potlatch Grain also submitted a proof of loss to Millers, along with a check in the amount of the prior year's premium payment. Millers denied coverage and returned the check along with a letter stating that the Millers policy had expired. On December 21, 2000, Potlatch Grain filed this action seeking to recover on the Millers policy.

The parties both filed motions for summary judgment, which were heard on October 29, 2001. On December 21, 2001, the district judge entered an order granting Millers' motion for summary judgment and a judgment dismissing the complaint. Potlatch Grain then appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in granting summary judgment holding that the policy of property and casualty insurance from Millers Mutual Fire Insurance Company terminated on July 29, 1998?

B. Is Millers Mutual Fire Insurance Company entitled to an award of attorney fees under Idaho Code § 12–121?

## III. ANALYSIS

### A. Did the District Court Err in Granting Summary Judgment Holding that the Policy of Property and Casualty Insurance from Millers Mutual Fire Insurance Company Terminated on July 29, 1998?

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 44 P.3d 1100 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

---

1. The full text of the letter is as follows:

Previously I sent you a note that your Warehouseman's bond is set to cancel on 07/29/98. I just wanted to remind you once again of this. Also, your property and casualty insurance through Millers is also set to cancel on 07/29/98. We no longer represent Millers and perhaps you will be able to find a[sic] agent representing Millers closer to you and sign a broker letter. I will not pursue further action unless I hear from you.

Although the letter referred to the insurance as being "set to cancel," it is clear that McDonald Insurance meant the insurance was "set to expire." July 29, 1998, was the expiration date of the policy. A policy is cancelled if it is terminated at a date other than its expiration date. IDAHO CODE § 41–1842(2)(a).

The parties' arguments center upon the meanings of Idaho Code § 41–1842(4) and a similar policy provision. Idaho Code § 41–1842(4) provides:

(4) Notice of nonrenewal.

(a) An insurer may decline to renew a policy if the insurer delivers or mails to the first-named insured, at the last known mailing address, written notice that the insurer will not renew the policy. Such notice shall be mailed or delivered at least forty-five (45) days before the expiration date. If the notice is mailed less than forty-five (45) days before expiration, coverage shall remain in effect until forty-five (45) days after notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the previous year's rate. For purposes of this section, the transfer of a policyholder between companies within the same insurance group is not a nonrenewal or a refusal to renew. In addition, changes in deductibles, changes in premium, and changes in the amount of insurance or reductions in policy limits or coverage shall not be deemed to be nonrenewals or refusals to renew. Notice of nonrenewal is not required if:

(i) The insurer or a company within the same insurance group has offered to issue a renewal policy; or

(ii) Where the named insured has obtained replacement coverage or has agreed in writing to obtain replacement coverage.

(b) If an insurer provides the notice described in subsection (4) of this section and thereafter the insurer extends the policy for ninety (90) days or less, an additional notice of nonrenewal is not required with respect to the extension.

The policy included an endorsement applicable to Idaho. That endorsement contained the following provision:

G. Nonrenewal.

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations, a written notice of intention not to renew at least 45 days prior to the expiration or anniversary date of the policy.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

3. If notice is not mailed or delivered at least 45 days before the expiration or anniversary date of this policy, this policy will remain in effect until 45 days after notice is mailed or delivered. Earned premium for the extended period of coverage will be calculated pro rata at the rates applicable to the expiring policy.

4. We need not mail or deliver this notice if:

a. We have offered to renew this policy;

b. You have obtained replacement coverage; or

c. You have agreed in writing to obtain replacement coverage.

5. If notice is mailed, proof of mailing will be sufficient proof of notice.

■ Potlatch Grain argues that the letter sent to it by McDonald Insurance on July 16, 1998, was a notice of nonrenewal from Millers and that because the letter was mailed less than forty-five days before the policy's expiration date, the policy remained in effect for forty-five days after the notice was mailed. The policy was therefore in effect when the fire occurred. Millers contends that the letter from McDonald Insurance was not a notice of nonrenewal from Millers because McDonald Insurance was no longer its agent and was not authorized by it to send the letter. Millers also asserts that because Potlatch Grain obtained replacement coverage before the loss, it was not required to send any notice. Potlatch Grain counters by arguing that whether or not the insurance it purchased from American West was replacement coverage or additional coverage is an issue of fact that must be resolved by the jury. Potlatch also argues that the statutory and policy provisions stating that the insurer need not give notice of nonrenewal if the insured has obtained replacement coverage should not apply in this case because Millers did not know whether or not Potlatch Grain had obtained replacement coverage.

The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Hart,* 135 Idaho 827, 25 P.3d 850 (2001). If the language of the statute is clear and unambiguous, we will not consider the legislative history or other extrinsic evidence offered for the purpose of altering the clearly expressed intent of the legislature. *Id.* When interpreting the statute, we must give the words used their plain, usual, and ordinary meaning, and we must construe the statute as a whole. *Id.* Similarly, whether or not an insurance contract is ambiguous is a question of law over which this Court exercises free review. *Mutual of Enumclaw Life Ins. Co. v. Lincoln,* 131 Idaho 454, 958 P.2d 1140 (1997). A contract is ambiguous if it is reasonably subject to conflicting interpretations. *Id.* If the language of the contract is not ambiguous, coverage must be determined in accordance with the plain meaning of the words used.

In this case, Millers did not give notice of nonrenewal to Potlatch Grain. The only notice sent to Potlatch Grain regarding the expiration of the Millers policy was the letter sent by McDonald Insurance on July 16, 1998. There is nothing in the record indicating that McDonald Insurance was acting as an agent for Millers when it sent that letter. Indeed, in the letter McDonald Insurance stated, "We no longer represent Millers and perhaps you will be able to find a[sic] agent representing Millers closer to you and sign a broker letter."

Idaho Code § 41–1842(4)(a) provides, "Notice of nonrenewal is not required if: ... Where the named insured has obtained replacement coverage." The insurance policy likewise provides, "We need not mail or deliver this notice [of intention not to renew] if: ... You have obtained replacement coverage." Both the statute and the insurance policy unambiguously provide that the insurer need not send notice of nonrenewal if the insured has obtained replacement coverage. Potlatch Grain would have us read into the statute and the policy a requirement that the insurer must have knowledge that the insured has obtained replacement coverage before it is excused from giving the notice. Neither the statute nor the policy so provides, and therefore there is simply no basis for doing so. Where a statutory or contractual provision is unambiguous, the interpretation is governed by the plain meaning of the words. *Ahles v. Tabor,* 136 Idaho 393, 34 P.3d 1076 (2001); *Nordstrom v. Guindon,* 135 Idaho 343, 17 P.3d 287 (2000). Both the statute and the policy simply provide that notice of nonrenewal is not required if the insured has obtained replacement coverage. Neither includes a provision stating that the insurer is relieved of the notice requirement only once it learns that the insured has obtained replacement coverage.

The harm that Idaho Code § 41–1842(4) and the corresponding policy provision seek to prevent is a lapse in coverage that is not intended by the insured. The purpose of the forty-five-day notice of nonrenewal is to give the insured adequate time to obtain replacement coverage. Once the insured has done so, there is no need for a notice of nonrenewal because the harm of an unintended lapse in coverage has been averted. It has been averted regardless of whether or not the insured notifies the prior insurer that the insured has obtained replacement coverage. The existence of a lapse in coverage does not depend upon the knowledge of the prior insurer but upon the fact of whether or not the insured has obtained replacement insurance.

Potlatch Grain argues that whether or not the American West policy was replacement or additional insurance is a question of fact that must be resolved by the jury. Neither party requested a jury trial in this case. Therefore, the district court is entitled to resolve any conflicting inferences from the undisputed facts. *Herman ex rel. Herman v. Herman,* 136 Idaho 781, 41 .P.3d 209 (2002). The undisputed facts regarding the purchase of the American West policy were set forth in the affidavits of Wayne A. Krasselt, the manager of Potlatch Grain; of Gene Guilfoy, Potlatch Grain's insurance agent; and of Kandace Kepler, an agent for McDonald Insurance. In his first affidavit, Mr. Krasselt stated:

7. In April 1998, I also began looking for a better property and casualty policy. I wanted to see what was out there and what comparable costs would be.... In order to do the comparative shopping I

provided Gene Guilfoy [Potlatch Seed's local insurance agent] with a copy of my most recent declarations page so that he would know what I was looking for.

8. In early July, 1998, I received a bid from Gene Guilfoy on a policy through American West Insurance carriers.... On July 16th I received notice that Millers Mutual Fire Insurance Company was going to cancel my then existing coverage.[2] ... Shortly thereafter I called Gene Guilfoy and told him I would take the policy if financial arrangements could be made. At this time in the companies [sic] history not all of the insurance premium could be paid at once.

. . . .

11. ... I have never considered the American West policy as replacement coverage. Prior to the fire and shortly after August 5, 1998, I frankly did not know whether I had any insurance save and except what was stated in the state endorsement to the Millers Mutual Fire Insurance Company which indicated that insurance would remain in effect forty-five (45) days after notice."

The bid to which Mr. Krasselt referred in paragraph 8 of his affidavit was a letter from Mr. Guilfoy setting out the coverage limits and total premium under the proposed American West policy. In his second affidavit, Mr. Krasselt stated that he had requested a bid based upon the same coverage limits provided by the Millers policy.

In his affidavit, Gene Guilfoy stated:

3. During the process of securing a warehouse bond, Wayne [Krasselt] asked me to look into providing property and casualty insurance for Potlatch Grain and Seed. I was ultimately able to find a carrier and forwarded a quote sheet to Wayne as an offer. This occurred on or about July 7, 1998.....

4. On or about July 14, 1998, I got a call from Wayne to go ahead and order the policy. I did so with the intent of having it cover from the end of the current Millers Mutual Fire Insurance Company policy of

July 29, 1998 to July 29, 1999. I contacted American West and ordered the policy.

Kandace Kepler stated in her affidavit as follows:

4. On July 28, 1998, the day before Potlatch Grain & Seed's property and casualty insurance policy through Millers was set to expire, I spoke to Mr. Krasselt by telephone. Mr. Krasselt indicated that he received the July 16, 1998, letter and had already moved insurance coverage to another agent whom I later learned was Mr. Gene Guilfoy of Guilfoy Insurance in Moscow, Idaho. Mr. Krasselt also informed me in this telephone conversation that he had in fact had [sic] bound coverage on the property and casualty packages as well as the warehouseman's bond also scheduled to cancel on July 29, 1998.

In response to Ms. Kepler's affidavit, Mr. Krasselt filed a second affidavit in which he stated, "I told her [Ms. Kepler] that we had contacted another agent, Guilfoy Insurance, and they were getting us bound through another company. I told her that we had always wanted to work with a local agent and she need not worry anymore."

The district court did not err in concluding that the undisputed facts, and the reasonable inferences the district court was entitled to draw from those facts, showed that the American West policy was replacement coverage. Although Mr. Krasselt stated in his first affidavit that he did not consider the American West policy as replacement coverage, Potlatch Grain conceded that in context Mr. Krasselt's statement could reasonably be interpreted as stating that he did not consider the American West policy as replacement coverage because he did not know whether it was in force prior to the fire. In his first affidavit, Mr. Krasselt explained that he wanted to negotiate payment terms for the American West premium; that he did not agree to those terms until August 13, 1998; that he did not make the first premium payment until September 1998; and that for a period of time he did not know whether the American West policy was in force.

**2.** The notice to which Mr. Krasselt refers is the letter from McDonald Insurance quoted in footnote 1.

**60**

The record in this case does not contain any sworn statement by Mr. Krasselt, or anyone else, to the effect that the American West insurance policy was intended to be supplemental insurance, or that it was intended that both insurance policies would remain in effect. Had the American West policy been intended to be supplemental insurance when it was purchased, Mr. Krasselt could easily have so stated. Summary judgment cannot be defeated by an affidavit that is carefully drawn to imply, but avoid directly stating, conflicting facts. The district court did not err in finding that the American West policy was purchased as replacement coverage and, therefore, in granting summary judgment in favor of Millers.

**B. Is Millers Mutual Fire Insurance Company Entitled to an Award of Attorney Fees Under Idaho Code § 12–121?**

■ Millers requests an award of attorney fees on appeal pursuant to Idaho Code § 12–121. We conclude that the appeal was not brought or pursued frivolously, unreasonably, or without foundation, and therefore decline to award attorney fees. *Van Brunt v. Stoddard,* 136 Idaho 681, 39 P.3d 621 (2001).

### IV. CONCLUSION

The judgment of the district court is affirmed. Costs, but no attorney fees, are awarded to the respondent Millers Mutual Fire Insurance Company.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL concur.