# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38336-2010

| | | |
|---|---|---|
| **MARKEL INTERNATIONAL INS. CO., LTD, a corporation incorporated under the laws of England and Wales with principal place of business in London, England authorized to conduct business in surplus lines insurance in the state of Idaho,** | ) ) ) ) ) ) | Boise, May 2012 Term |
| | ) | 2012 Opinion No. 90 |
| | ) | |
| | ) | Filed: June 11, 2012 |
| | ) | |
| **Plaintiff-Respondent-Cross Appellant,** | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JASON EZRA EREKSON, as Personal Representative for the ESTATE OF THOMAS R. EREKSON, Deceased,** | ) ) ) | |
| | ) | |
| **Defendant-Appellant-Cross Respondent,** | ) ) | |
| | ) | |
| **ELK COUNTRY SPORTS, LTD CO., an Idaho Company,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, in and for Bear Lake County.  The Hon. Stephen S. Dunn, District Judge.

The judgment of the district court is affirmed.

Brent O. Roche; Racine, Olson, Nye, Budge & Bailey, Chtd; Pocatello; argued for appellant.

Robert D. Williams, Coeur d'Alene, argued for respondent.

---

EISMANN, Justice.

This is an appeal from a judgment holding that the Designated Project or Premises endorsement in a commercial general liability insurance policy purchased by a sporting goods store excluded coverage for a claim arising out of the sale of improperly reloaded ammunition.

We affirm the judgment on the alternate ground that coverage was excluded under the Products-Completed Operations Hazard endorsement.

## I.

### Factual Background.

On May 31, 2007, Tom Erekson purchased from Elk Country Sports, Ltd. Co., a sporting goods store in Montpelier, a used Magnum Research BFR revolver chambered in .500 S&W Magnum. Along with the revolver, Mr. Erekson received various accessories that included three boxes of handloaded ammunition, all of which Elk Country Sports had purchased from the prior owner.

On June 11, 2007, Mr. Erekson and one of his sons went to a city-owned shooting range to shoot the revolver. Earlier in the day, he had obtained a key to the range from Elk Country Sports. Upon arriving at the range, Mr. Erekson loaded the five chambers in the cylinder with cartridges from a box of the reloaded ammunition. While using a two-handed hold, he cocked the hammer and fired the revolver. The cartridge aligned with the barrel discharged, and two cartridges to its right detonated simultaneously. When the cartridge under the loading gate detonated, it sheared off the loading gate, and a portion of the cartridge case rocketed rearward, striking Mr. Erekson in the forehead, penetrating his skull, and imbedding three inches into his brain. He also lost a portion of his left thumb.

The cause of the accident was the reloaded ammunition. With centerfire ammunition, there is a pocket in the center of the base of the cartridge case into which a primer is inserted. When the firing pin strikes the primer, it produces a flame within the cartridge case that ignites the powder. Cartridge cases for the .500 S&W Magnum were originally designed for use with large pistol primers, but some manufacturers later produced cases designed for use with large rifle primers. Because rifle primers are longer than pistol primers, inserting rifle primers in a case designed for pistol primers will result in the primer protruding above the case head (the base of the case). A protruding primer can be discovered by visual inspection or by running a finger across the case head. The cases that are designed for large rifle primers have an "R" on the headstamp on the case head to indicate that they are designed for rifle primers. The person who had reloaded the ammunition that Mr. Erekson obtained from Elk Country Sports had inserted rifle primers in cases designed for pistol primers. Upon firing the revolver, the recoil caused the

2

base of the cartridge located to the immediate right of the fired cartridge to slam against the flat surface of the reloading gate, detonating the cartridge due to the protruding primer. The .500 S&W Magnum is a high pressure cartridge, and the loading gate was not strong enough to contain the rearward thrust of the case. As a result, the loading gate was sheared off and a portion of the case head rocketed rearward, striking Mr. Erekson in the forehead.

Elk Country Sports had a policy of commercial general liability insurance issued by Markel International Ins. Co., Ltd., which brought this action seeking a declaratory judgment that the policy did not provide coverage for Mr. Erekson's injuries and damages. Markel International moved for summary judgment, contending that coverage was excluded pursuant to three endorsements attached to the insurance policy. For simplicity, they will be referred to as the "Designated Premises or Project Endorsement," the "Firearms Exclusion," and the "Products-Completed Operations Hazard Endorsement." The district court held that the Designated Premises or Project Endorsement excluded coverage and granted the motion for summary judgment.

Mr. Erekson moved for reconsideration, asking the court to also rule on the other two endorsements in the event there is an appeal from its ruling. The court held that the Firearms Exclusion was ambiguous and that the Product-Completed Operations Hazard Endorsement clearly did not exclude coverage. It reaffirmed its holding that coverage was excluded under the Designated Premises or Project Endorsement.

On October 26, 2010, the court entered a declaratory judgment holding that there was no coverage under the policy for the injuries or damages suffered by Mr. Erekson. During the proceedings, Mr. Erekson passed away, and his estate was substituted for him as a party. The estate appealed the court's ruling on summary judgment, and Markel International cross-appealed the court's ruling on the motion for reconsideration.

## II.

### Standard of Review

Whether a provision in an insurance policy is ambiguous is a question of law over which this Court exercises free review. *Purdy v. Farmers Ins. Co. of Idaho*, 138 Idaho 443, 445, 65 P.3d 184, 186 (2003). A provision is ambiguous if it is reasonably subject to differing interpretations. *Id.* If the provision is unambiguous, coverage must be determined in accordance

3

with the plain meaning of the words used. *Potlatch Grain and Seed v. Millers Mut. Fire Ins. Co.*, 138 Idaho 54, 58, 57 P.3d 765, 769 (2002).

## III.

### Did the District Court Err in Holding that the Designated Premises or Project Endorsement Excluded Coverage?

The insurance policy includes a Designated Premises or Project Endorsement that provides as follows:

> This Insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of: 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or 2. The project shown in the Schedule.

The endorsement includes a Schedule stating that the premises were "407 Washington St., Montpelier, ID 83254" and the project was "Sporting Goods Store."

In holding that this endorsement excludes coverage, the district court wrote, "The Court plainly sees the policy in this case as a premises liability policy which limits liability to activities and conduct related [to] the premises, not the business." In so holding, the court erred. In reaching its decision, the district court construed the premises and the project as being identical. That is contrary to the clear wording of the endorsement, especially when construed in the context of the entire policy.

The declaration page of the policy states that Elk Country Sports, Ltd. Co., purchased insurance that provided "Commercial General Liability" coverage and "Commercial Property" coverage, with separate amounts charged as premiums for each coverage. The Commercial General Liability portion of the policy states, "We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies."[1]

---

[1] The policy also provides that it applies to bodily injury only if it was caused by an "occurrence" (defined as an accident) that takes place in the coverage territory (which includes the United States of America), the bodily injury occurred during the policy period, and the insured or its employees did not know of the bodily injury prior to the policy period. Those requirements were met in this case.

For a limited liability company such as Elk Country Sports, an insured also includes its members, "but only with respect to the conduct of your business"; its managers, "but only with respect to their duties as your managers"; and its employees, "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." In the policy, the words "you" and "your" refer to the named insured, Elk Country Sports. Thus, the policy provides coverage to Elk Country Sports for the actions of its members with respect to the conduct of the business, for the conduct of its managers with respect to their duties as managers in the business, and for the conduct of its employees acting within the scope of their employment while performing duties related to the conduct of the business.

The Designated Premises or Project Endorsement states that the policy applies only to bodily injury "arising out of: 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or 2. The project shown in the Schedule." The word "or" between the two numbered phrases is "[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things." *Frasier v. Frasier*, 87 Idaho 510, 514, 394 P.2d 294, 296 (1964) (quoting *Black's Law Dictionary* (4th ed. 1957)). Thus, the policy covers bodily injury arising out of either the "ownership, maintenance or use of the premises" or the "project." The use of the disjunctive shows that the premises and the project do not mean the same thing. Otherwise, there would be no need for the disjunctive. Likewise, the two phrases are in the disjunctive, not conjunctive. For there to be coverage for bodily injury arising out of the project, the bodily injury need not also arise out of the ownership, maintenance or use of the premises.

The word "project" is not defined other than as stated in the endorsement, which is "Sporting Goods Store." The only reasonable construction of the endorsement is that the Sporting Goods Store is the business conducted on the premises. Thus, this endorsement provides coverage for bodily injuries that arise out of the business, which is a sporting goods store. The allegation in this case is that Elk Country Sports was negligent in selling Mr. Erekson the reloaded ammunition, either by failing to inspect the handloaded ammunition to see if it was safe or by failing to warn. That is a claim that arises out of the business being conducted by Elk Country Sports. Therefore, this endorsement does not exclude coverage for that claim.

**IV.**

5

**Did the District Court Err in Holding that the Products-Completed Operations Hazard Endorsement Does Not Exclude Coverage?**

The insurance policy includes a Product-Completed Operations Hazard Endorsement. It is applicable to the commercial general liability coverage, and it states, "This Insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard'." The phrase "products-completed operations hazard" is defined in the policy to include "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' . . . ." The words "Your Product" are defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [y]ou . . . includ[ing] . . . [t]he providing of or failure to provide warnings or instructions." In this case, the bodily injury occurred away from the premises of Elk Country Sports, and it arose out of goods sold by Elk Country Sports (the improperly reloaded ammunition) and/or the failure to provide warnings or instructions about reloaded ammunition.[2]

The district court held that this endorsement did not apply based upon this Court's decision in *Chancler v. American Hardware Mut. Ins. Co.*, 109 Idaho 841, 712 P.2d 542 (1985). In *Chancler*, the insured had purchased a used crane, modified it by adding a ten-foot extension to the boom, and then sold it without providing any safety information regarding the maximum weight loads for the crane as modified. An employee of the purchaser was severely injured while operating the crane when the modification to the boom collapsed because the load the crane was carrying exceeded its carrying capacity. The seller of the crane had an insurance policy which excluded coverage for "products hazard," which was defined as including "bodily injury and property damage arising out of the named insured's products . . ., but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others." *Id*. at 844-45, 712 P.2d at 545-46. We held that the exclusion did not exclude coverage for negligent failure to warn.

---

[2] The owner of Elk Country Sports testified that it would have been illegal to sell the reloaded ammunition, that he had not shown the reloaded ammunition and other accessories to Mr. Erekson before he decided to purchase the revolver, and he just gave those items to Mr. Erekson after he had paid the purchase price. Mr. Erekson testified that the extras, especially the three boxes of reloaded ammunition that would have cost about $150 new, were significant inducements for him to purchase the revolver. Because the exclusion applies to goods "manufactured, sold, handled, distributed or disposed of" by Elk Country Sports, if we considered as true the owner's testimony the wording would still apply here, which Mr. Erekson's counsel admitted during oral argument.

In holding that the exclusion did not exclude coverage for negligent failure to warn, the Court relied heavily upon the fact that failure to warn was not mentioned in the policy. The Court stated as follows:

> Our conclusion is the same reached in *Cooling v. United States Fidelity and Guaranty Co.*, 269 So.2d 294, 297–98 (La.App.1972), *cert. den.*, 272 So.2d 373 (La.1973). In that case, the Louisiana Court of Appeals stated the following in response to the very same issue before us:
>
> > The parties intended that the exclusions would apply to coverage for injuries received as a result of the sale of defective products or as a result of negligence in positive representations or warranties. This construction is supported by the cases cited by U.S.F.&G. for the proposition that the exclusions apply to Cooling because his alleged negligence was a part of a sale of products. All but one of the cited cases are distinguished from the case at bar either on the basis of the presence of defects in the products sold or by tortious positive representations or warranties, neither of which is present in this case.
> >
> > *The definitions of products hazard and completed operations hazard do not mention omissions or failure to warn when there is no affirmative duty [imposed by the insurer] to do so. The definitions of products hazard and completed operations hazard do include injuries arising out of representations or warranties. But the converse, the failure to represent is not included in these definitions. If the parties intended to limit the liability of the insurer by excluding coverage for omissions and failure to warn when there is no affirmative duty to warn, the insurer could have so provided.* (Emphasis added.)
>
> We find this reasoning persuasive, especially in light of the rules of interpretation in relating to insurance policies, which we now address.

*Id.* at 846-47, 712 P.2d at 547-48.

In the present case, the Product-Completed Operations Hazard Endorsement expressly excludes coverage for failure to warn. The policy's definition of the insured's product includes "[t]he providing of or failure to provide warnings or instructions." Therefore, *Chancler* does not apply to the policy in this case.

The Court in *Chancler* also stated that the exclusion only applied to claims based upon strict liability because "[n]owhere does it purport to exclude injuries arising out of negligent

7

conduct, and we decline to so expand the definition." *Id*. at 847, 712 P.2d at 548. That statement is simply inaccurate dicta. Neither before nor after *Chancler* have we required that an exclusion in a policy of liability insurance specifically mention the theory of liability in order to exclude certain types of injury.

Prior to the decision in *Chancler*, we issued our opinion in *Parma Seed, Inc. v. General Ins. Co. of America*, 94 Idaho 658, 496 P.2d 281 (1972). In that case, a retail seller's supplier delivered the wrong product, which the retailer sold to its customers as a weedkiller. It was more potent than the product that had been ordered, and it destroyed the crops upon which it was applied. The issue was whether the "Products and Completed Operations Exclusion" in the retail seller's liability policy excluded coverage. That endorsement excluded liability for claims or expenses arising out of

> goods or products manufactured, sold, handled, or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented, or controlled by the named insured . . . .

94 Idaho at 659, 712 P.2d at 282.

The insured (retail seller) argued that liability arose not from the product, but from the insured's negligent failure to discover that it had received the wrong product from its supplier, and thus the exclusion did not apply. *Id*. at 660, 496 P.2d at 283. This Court disagreed, holding that the exclusion applied. In doing so, we stated as follows:

> The Court in *Tidewater* [*Associated Oil Co. v. Northwest Casualty Co.*, 264 F.2d 879 (9th Cir. 1959)] states:
>
> > 'In practically every case in which injury or damage is caused by the handling or use of a product, or by a defective condition in such product, the occurrence causing the injury or damage can be traced to some pre-existing negligence. Indeed, were this not so the injured person would have no basis for a tort claim against the insured. Thus, if the allegation of pre-existing negligence were to be regarded as controlling, the result would be to emasculate the product liability exclusion.'
>
> We concur with this reasoning, and find it supportive of our reading of the products exclusionary clause in the case before us.

94 Idaho at 662, 496 P.2d at 285.

8

Thus, in *Parma Seed*, the exclusion did not mention negligence, but we held that an exclusion for "goods or products manufactured, sold, handled, or distributed by the named insured" still applied even to a claim that the retail seller was negligent in failing to discover that it had received the wrong product before selling it. It was not necessary that the exclusion expressly mention negligence in order to apply to the conduct excluded.

After the decision in *Chancler*, this Court issued the decision in *Continental Casualty Co. v. Brady*, 127 Idaho 830, 907 P.2d 807 (1995). In that case, the day after a settlement was reached an attorney convinced his clients to sign a new contingent fee agreement that increased the amount of attorney fees to which the attorney was entitled to receive from the settlement. His clients later sued to recover a portion of the fees based upon unjust enrichment, the Consumer Protection Act, breach of fiduciary duty, and lack of consideration for the new contingent fee agreement. The attorney's liability insurance policy excluded coverage for "any fine, penalty, or claim for return of fees." The attorney argued that this was not merely a fee dispute. We held that the exclusion applied, stating:

> The CNA insurance agreement provides that CNA will not defend or pay for "any fine, penalty, or claim for return of fees." The focus of this exclusion is clearly on the relief requested. If the party is requesting a "return of fees," it is immaterial what the actual theory of recovery is since the policy flatly excludes "*all claims*" for the return of fees. See *Hofing v. CNA Ins. Cos*., 247 N.J.Super. 82, 588 A.2d 864 (N.J.Super.Ct.App.Div.1991) (in interpreting the same exclusion the court concluded that even allegations of professional negligence would be excluded if they were aimed at the recovery of fees).

*Id*. at 833, 907 P.2d at 810.

Thus, in *Continental Casualty*, we held that the theory of liability is immaterial when the policy excludes coverage for the relief requested. As we stated, "[I]t is immaterial what the actual theory of recovery is since the policy flatly excludes 'all claims' for the return of fees." *Id*.

In this case, the Product-Completed Operations Hazard Endorsement excludes coverage for "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' . . . ." The words "Your Product" are defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [y]ou . . . includ[ing] . . . [t]he providing of or failure to provide warnings or instructions."

9

That exclusion applies to the bodily injury alleged in this case. It arose out of Elk Country Sports's product as defined in the policy.

"Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003). We affirm the judgment of the district court on the ground that the Product-Completed Operations Hazard Endorsement excludes coverage. Because coverage is excluded under that endorsement, we need not address the Firearms Exclusion.

## V.
### Conclusion.

We affirm that portion of the judgment which states: "Markel has no duty or obligation to indemnify Elk Country for the damages sought by Erekson in Bear County District Court case number CV-2009-0073" and "Markel is not obligated and has no duty to defend Elk Country in Bear County District Court case number CV-2009-0073 from the claims of Erekson." We award costs on appeal to respondent.

Chief Justice BURDICK, Justices J. JONES and HORTON **CONCUR.**

W. Jones, J., specially concurring:

I concur in the majority Opinion that the Products Completed Operations Hazard Endorsement excludes insurance coverage in this case, and I also concur with the Majority that the Designated Premises or Project Endorsement is written in the disjunctive as noted by the Majority and with the conclusion that the Project portion of the Endorsement does not exclude coverage. I write separately only to point out that the district court apparently believed that the Designated Premises portion of the Endorsement precluded coverage simply because the "bodily injury" occurred off the premises owned or used by the insured. I simply want to express my opinion that the fact that the injury occurred off the Designated Premises is not conclusive as to whether that portion of the Endorsement excludes coverage or not. Other factors must be considered besides the location at which the injury occurred to determine whether the Designated Premises portion of the Endorsement does or does not bar coverage. The Majority seems to express no opinion on that particular issue; rather, it focuses on the fact that the Project portion

10

of the Endorsement is a different matter and does not bar coverage.  I write this concurrence only to alert readers explicitly that the Majority does not appear to express any opinion on the Designated Premises portion of the Endorsement and neither do I.