# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 44940-44941

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | Boise, April 2018 Term |
| | ) | |
| Plaintiff-Appellant, | ) | 2018 Opinion No. 43 |
| | ) | |
| v. | ) | Filed: April 26, 2018 |
| | ) | |
| MANUEL JESUS COTA-MEDINA, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. D. Duff McKee, District Judge.

The district court's order is <u>reversed</u>.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Canyon County Public Defender's Office, Caldwell, for respondent. Randy W. Smith and Mikel J. Hautzinger argued.

_____

BURDICK, Chief Justice.

The State of Idaho appeals from the Canyon County district court's decision reversing the magistrate court's order waiving juvenile jurisdiction of Manuel Jesus Cota-Medina (Cota-Medina). Cota-Medina was charged with trafficking heroin as a result of an undercover police operation. Cota-Medina was seventeen years old when he allegedly committed the trafficking offense. The State moved to waive juvenile jurisdiction and proceed on the trafficking charge in adult criminal court. The magistrate court, applying the relevant statute, determined juvenile jurisdiction should be waived and Cota-Medina should be tried in adult court. Cota-Medina appealed and the district court, acting in an intermediate appellate capacity, reversed the magistrate court's order, thus concluding juvenile jurisdiction should not have been waived. The State timely appealed the district court's decision. We reverse the district court's order and affirm the magistrate court's order waiving juvenile jurisdiction.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2016, investigator Joel Garcia (Garcia) of the Nampa Police Department began working in an undercover capacity with a confidential informant (informant) to set up the delivery and purchase of heroin. The informant introduced Garcia to a supplier of heroin based out of Phoenix, Arizona. Posing as a drug buyer, Garcia set up a deal with the Phoenix supplier to purchase twenty-five "pieces" of heroin, with one piece being about twenty-five grams. The Phoenix contact told the informant and Garcia that they would need to pick up a man named Rodrigo Ramirez (Ramirez) from the Boise Airport. Garcia and the informant picked up Ramirez on June 16, 2016, and drove to the Holiday Inn Express hotel in Nampa, Idaho. Ramirez told Garcia and the informant that he would call them when the car loaded with the heroin arrived.

Ramirez called two hours later stating the car had arrived, after which Garcia drove to the hotel and got into the loaded car with Ramirez. Cota-Medina was sitting in the driver's seat of the car, and his cousin, nineteen-year-old Irwin Camacho (Camacho) was in the passenger seat. Both Cota-Medina and Camacho indicated there were drugs in the back of the car, and that they needed to use a tool that would open and remove the drugs in about five minutes. Cota-Medina indicated they needed to drive somewhere safer, like a house with a garage, to unload the drugs. Garcia then exited the vehicle, gave the arrest signal, and all three suspects were arrested and the vehicle searched.

Although Garcia expected to purchase twenty-five pieces of heroin, the vehicle contained 2,387.4 grams of heroin, which is over five pounds, and about ninety-five pieces. The street value of the heroin, depending on how it is sold, had a value between $350,000 and $500,000. The investigators learned that the additional quantities of heroin were intended for other unknown buyers, to which Cota-Medina and Camacho would deliver after delivering Garcia's drugs.

The three suspects—Cota-Medina, Camacho, and Ramirez—were interviewed and provided statements. Cota-Medina stated that a few days before driving from Phoenix to Nampa he met a person named "Pariente" who asked Cota-Medina if he would drive a car up to Idaho to deliver some "little pieces." Cota-Medina stated he knew that meant drugs but he did not know how much was involved. Cota-Medina was to be paid $4,000 and he arranged for Camacho to assist and split the money. Cota-Medina had been living with Camacho, his nineteen-year-old cousin, and Cota-Medina stated Camacho was the adult responsible for him. The car used to

transport the heroin belonged to Camacho and the drugs had been concealed in the car prior to leaving Phoenix. Cota-Medina denied knowing there were drugs hidden in the car, but the magistrate court found Cota-Medina's "denial of knowledge of concealed drugs [was] not credible." The magistrate court found that Garcia's testimony and Cota-Medina wanting to move the car to a safer location to unload the drugs demonstrated Cota-Medina did have knowledge there were drugs in the car.

As to Cota-Medina's parents, the magistrate court found Cota-Medina's father lives in Phoenix and is not involved in Cota-Medina's life. When Cota-Medina was arrested, police attempted to contact Cota-Medina's father; however, upon learning Cota-Medina was arrested, the father hung up the phone and subsequent calls were not answered. Cota-Medina's mother lives in Mexico, and is in contact with Cota-Medina only through Facebook messenger.

Cota-Medina has no known criminal history. He last attended school in Phoenix, where he was dropped from school for poor attendance in March of 2016. The magistrate court found Cota-Medina's poor grades and failure to advance were a result of poor attendance rather than a learning disability. Cota-Medina turned eighteen on September 11, 2016. Cota-Medina has never held down a job. Cota-Medina did admit to drug use, and admitted to using cocaine to stay awake on the drive from Phoenix to Idaho.

Cota-Medina was charged with trafficking heroin, and the prosecution filed a motion to waive juvenile court jurisdiction under Idaho Code section 20-508. The magistrate court ordered a juvenile probation report and an evidentiary hearing. The probation report recommended the juvenile court retain jurisdiction. Following the evidentiary hearing, the magistrate court weighed the factors under Idaho Code section 20-508 and determined juvenile jurisdiction should be waived and Cota-Medina should be tried in adult court. In so holding, the magistrate court noted that four factors weighed heavily in favor of waiving juvenile jurisdiction, one weighed against, and one was neutral.[1] Following the magistrate court's waiver of juvenile jurisdiction, Cota-Medina appealed, and the district court, acting in an intermediate appellate capacity, reversed the magistrate court's waiver of jurisdiction. The district court stated the

---

[1] The magistrate court found the factors weighing in favor of waiver were: the seriousness of the offense, as evidenced by the heavy punishment for adult offenders; that Cota-Medina committed the crime in a premeditated and willful manner; that the crime was against persons rather than property; and that Cota-Medina was mature and living independently. The fact that Cota-Medina had no criminal history weighed against waiver, and the likelihood of developing education and job skills was neutral, with the magistrate stating such skills could be acquired in either system.

3

magistrate court incorrectly applied the legal standards articulated in 20-508, and the legal standards are issues over which the district court exercised free review. The district court stated that four factors clearly weighed against waiver, and two were neutral.[2] Thus, the district court reversed the magistrate court's decision. The State timely appealed.

## II.    STANDARD OF REVIEW

> A decision regarding whether or not to waive a juvenile into adult court is a matter that is within the sound discretion of the juvenile court. Accordingly, a waiver decision will be upheld on appeal so long as it was not an abuse of discretion. A waiver decision will not be regarded as an abuse of discretion when the court: (1) perceived the issue as one of discretion; (2) acted within the boundaries of its discretion and consistently with the legal standards applicable to the available choices; and (3) reached its decision through an exercise of reason. Additionally, the court's findings of fact must be supported by substantial and competent evidence.

*In re Doe*, 147 Idaho 243, 247–48, 207 P.3d 974, 978–79 (2009) (citations omitted).

When this Court reviews the decision of a district court sitting in its capacity as an appellate court, the standard of review is as follows:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

> *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012) (quoting *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)). Thus, this Court does not review the decision of the magistrate court. *Id.* "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.' " *Id.* (quoting *State v. Korn*, 148 Idaho 413, 415 n. 1, 224 P.3d 480, 482 n. 1 (2009)).

> Prior to *Losser*, when this Court reviewed a district court acting in its appellate capacity the standard of review was: "when reviewing a decision of the district court acting in its appellate capacity, this Court will review the record and the magistrate court's decision independently of, but with due regard for, the district court's decision." *Losser*, 145 Idaho at 672, 183 P.3d at 760. After *Losser*, this Court does not directly review a magistrate court's decision. *Id.* Rather, it is bound to affirm or reverse the district court's decision. *See Bailey*, 153 Idaho at 529, 284 P.3d at 973; *Korn*, 148 Idaho at 415 n. 1, 224 P.3d at 482 n. 1.

---

[2] The district court determined that whether the offense was against people or property was a neutral factor, as was the maturity factor. The district court concluded the remaining factors did not support waiving juvenile jurisdiction.

4

*State v. Doe*, 156 Idaho 243, 244–45, 322 P.3d 976, 977–78 (2014).

### III.     ANALYSIS

On appeal, the State argues that the district court erred when it reversed the magistrate court because the magistrate court did not abuse its discretion when it waived juvenile jurisdiction. Cota-Medina, on the other hand, argues that the district court correctly determined the magistrate court had abused its discretion as none of the factors favored waiving juvenile jurisdiction. For the reasons discussed below, the district court erred in reversing the magistrate court's order waiving juvenile jurisdiction over Cota-Medina.

Under the Juvenile Corrections Act (JCA), the juvenile courts have "exclusive, original jurisdiction" over a juvenile[3] who engages in an act that "is a violation of any federal, state, local or municipal law or ordinance which would be a crime if committed by an adult."[4] I.C. § 20-505(2); *In re Doe*, 147 Idaho at 248, 207 P.3d at 979. Juvenile jurisdiction may be retained only until a juvenile offender reaches twenty-one years of age. I.C. § 20-507. However, there are situations where an adult court may obtain jurisdiction over a juvenile. I.C. § 20-508. One such situation is when the crime the juvenile is charged with is one of those enumerated in the statute that automatically requires a person be subject to adult jurisdiction. I.C. § 20-509. The other method through which a juvenile can be subject to adult court jurisdiction is if juvenile jurisdiction is waived under Idaho Code section 20-508. The crime Cota-Medina was charged with—trafficking heroin—is not listed in Section 20-509, and as such he is not automatically subject to adult court jurisdiction. Thus, Cota-Medina can only be subject to adult court jurisdiction under a waiver order, governed by Section 20-508.

Pursuant to Section 20-508, a court can "waive jurisdiction under the juvenile corrections act over the juvenile and order that the juvenile be held for adult criminal proceedings" if the child was over fourteen years of age and engaged in an act that would be a crime if committed by an adult. I.C. § 20-508(1)(b). Whether or not a juvenile may be waived into adult court is "governed by the [S]ection 20-508(8) factors." I.C. 20-508(8); *In re Doe*, 147 Idaho at 250, 207 P.3d at 981. "Accordingly, the issue of whether the magistrate court abused its discretion in waiving [a juvenile] into adult court and, therefore, whether the district court erred in [reversing] the waiver order, must be analyzed under [S]ection 20-508(8)." *Id.* The statute provides that,

---

[3] " 'Juvenile' means a person less than eighteen (18) years of age or who was less than eighteen (18) years of age at the time of any alleged act, omission or status." I.C. § 20-502(10).
[4] Exceptions exist to this general rule; however, such exceptions are not relevant in this case.

5

[i]n considering whether or not to waive juvenile court jurisdiction over the juvenile, the juvenile court shall consider the following factors:

(a) The seriousness of the offense and whether the protection of the community requires isolation of the juvenile beyond that afforded by juvenile facilities;

(b) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(c) Whether the alleged offense was against persons or property, greater weight being given to offenses against persons;

(d) The maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and pattern of living;

(e) The juvenile's record and previous history of contacts with the juvenile corrections system;

(f) The likelihood that the juvenile will develop competency and life skills to become a contributing member of the community by use of facilities and resources available to the court;

(g) The amount of weight to be given to each of the factors . . . is discretionary with the court, and a determination that the juvenile is not a fit and proper subject to be dealt with under the juvenile court law may be based on any one (1) or a combination of the factors set forth within this section, which shall be recited in the order of waiver.

I.C. § 20-508. As provided in subsection (g) above, the amount of weight given to each factor is discretionary. I.C. § 20-508(8)(g). Moreover, the court can base its decision to waive juvenile jurisdiction on any one factor or any combination of factors. *Id.*

Here, the magistrate court found that factors (a), (b), (c), and (d) weighed in favor of waiver, with (e) weighing against waiver, and (f) being neutral. The district court employed its own legal analysis and determined factors (c) and (d) were neutral, and the remaining factors weighed against waiver. Each factor will be discussed in turn below.

(a) The seriousness of the offense and whether the protection of the community requires isolation of the juvenile beyond that afforded by juvenile facilities.

The magistrate court concluded this factor weighed in favor of waiver. The court stated that the Idaho legislature has imposed a mandatory minimum sentence of fifteen years in prison for adults who possess twenty-eight or more grams of heroin. I.C. § 37-2732B(a)(6)(C). The court noted Cota-Medina was carrying more than eighty-five times the amount of heroin that would require a court to impose the mandatory minimum sentence of fifteen years for an adult. If left in juvenile court jurisdiction, Cota-Medina would face only 180 days detention and three

6

years supervision. The court also concluded that Cota-Medina's statement that he was casually recruited to engage in this crime by a man he met at a party is "incredible." The court stated "it is simply implausible that a large scale heroin distributor would trust half a million dollars worth of heroin to a [seventeen] year old the day after they met at a party." Because of the severity of the crime and the relatively short period of time Cota-Medina would spend in juvenile detention, the magistrate court concluded this factor weighed heavily in favor of waiving juvenile jurisdiction.

The district court, on appeal, stated that the magistrate court incorrectly applied the legal standard, and proceeded to engage in its own analysis. The district court stated that because the legislature did not include the trafficking of controlled substances in Section 20-509, the statute requiring waiver to adult court, there must be something "exceptional" about the circumstances of the crime in order for this factor to favor a waiver. The district court stated that while trafficking heroin is a "very serious crime," Cota-Medina was not a central figure in this crime, as he did not make the deal or negotiate with potential buyers, and was the "lowest man on the ladder" rather than the "kingpin." The district court went on to say that while a kingpin should be isolated from the community, a "mere mule" does not need to be isolated in order for the community to be protected.

The district court's legal analysis was in error. First, the district court's analysis goes outside of the plain language of the statutory factor and inserts language and analysis not provided by the statute. As we have said, "[s]tatutory interpretation begins with the statute's plain language. This Court considers the statute as a whole, and gives words their plain, usual, and ordinary meanings." *State v. Taylor*, 160 Idaho 381, 385, 373 P.3d 699, 703 (2016) (citation omitted). Here, the plain language of the factor states only that the court consider the "seriousness of the offense and whether the protection of the community requires isolation" beyond that of a juvenile facility. I.C. § 20-508(8)(a). Nowhere in the statute is a defendant's level of involvement or hierarchy in the scheme of the crime contemplated. *Id.* The statute looks only to the seriousness of the crime, and the need for community protection. *Id.*

Moreover, while trafficking heroin is not included in Section 20-509, its exclusion from that statute does not mean there must be something "exceptional" about this juvenile to waive juvenile jurisdiction. Instead, the magistrate court was only permitted to consider the severity of the crime coupled with the need for community protection, as provided by the plain language in Section 20-508(8)(a). *See Taylor*, 160 Idaho at 385, 373 P.3d at 703 (stating statutory

interpretation begins with the statute's plain language). Here, the magistrate court's determination that transporting and delivering over five pounds of heroin is a serious offense that requires confinement beyond the 180 days provided in juvenile court was supported by substantial and competent evidence. When the district court employed its own legal analysis, not supported by the plain language of the statute, it erred. While a fifteen-year mandatory minimum sentence for a seventeen-year-old is a significant amount of time, the setting of mandatory minimum sentencing guidelines is within the purview of the legislature by constitutional fiat, and takes all discretion away from the court.

   (b) <u>Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.</u>

The magistrate court determined Cota-Medina committed the trafficking offense in a premeditated and willful manner, and as such this factor favored waiving juvenile jurisdiction. The magistrate court found that Cota-Medina had recruited Camacho's help, made arrangements to conceal the heroin in the car prior to departing Phoenix, obtained cocaine to stay awake on the drive to Idaho, and prearranged a communication strategy to telephonically contact Ramirez once in Idaho. The magistrate noted this was not a case of being in the wrong place at the wrong time; rather, the magistrate found there was clear evidence of willful planning and organization.

The district court stated that the preparatory acts that Cota-Medina engaged in were elements of the crime of trafficking itself, and thus the magistrate court had employed an incorrect legal analysis when it focused on the preparatory acts. The correct analysis, according to the district court, requires an inquiry into the defendant's conduct during the commission of the crime, and examines specifically whether force, fear, or danger to others were involved during the commission of the crime. The district court went on to say the "obvious criteria" is "whether there were guns involved. Was anybody packing? Did anybody get shot?"

The district court's analysis is erroneous under the plain language of the statue. The statute's language provides only whether the offense was committed in an "aggressive, violent, premeditated, *or* willful manner." I.C. § 20-508(8)(b) (emphasis added). The word "or" is a "disjunctive particle used to express an alternative or to give a choice of one among two or more things." *Markel Int'l Ins. Co., Ltd v. Erekson*, 153 Idaho 107, 110, 279 P.3d 93, 96 (2012) (quoting *Frasier v. Frasier*, 87 Idaho 510, 514, 394 P.2d 294, 296 (1964)). Thus, the statute does not require that the offense be committed in an aggressive, violent, premeditated, *and* willful manner. Here, the magistrate court determined the offense was committed in a premeditated and

8

willful manner. The district court essentially concedes the same, noting that premeditation and planning in and of themselves are necessary to complete the crime of trafficking. The statute does not require an additional finding of aggression or force. As such, the district court's analysis was erroneous under the statute, and the magistrate court did not err in finding this factor weighed in favor of a waiver.

(c) Whether the alleged offense was against persons or property, greater weight being given to offenses against persons.

The magistrate court determined this factor favored waiver because trafficking heroin is a crime against people, rather than a crime against property. The magistrate court noted the public policy behind the long mandatory sentences for drug trafficking are a result of the danger of drugs to the public. The district court stated that many people consider trafficking a victimless crime, or a medical problem, rather than a criminal one, and in any event this factor again required considering the individual's level of participation in the crime. Here, the district court noted Cota-Medina did not acquire or sell the drugs; rather, he was only involved in the transport, and his individual actions harmed no person or individual.

In this Court's cases that have addressed this factor, crimes against people have traditionally involved a defendant injuring people. In *In re Doe*, this Court upheld the magistrate's increased weight given to this factor when the crimes committed by the defendant, including attempted murder and battery, directly injured a young girl. 147 Idaho at 251, 207 P.3d at 982. In *Zamora v. State*, a crime was considered against persons when a defendant was driving under the influence, wrecked his vehicle, and injured his passengers. 123 Idaho 192, 192–95, 846 P.2d 194, 195–97 (1992). In *State v. Christensen*, a defendant accused of murdering his father was found to have committed a crime against a person rather than property. 100 Idaho 631, 632–33, 603 P.2d 586, 587–88 (1979).

In this case, Cota-Medina is charged with trafficking heroin. The facts in this case present a crime against persons. There can be no argument that heroin usage and addiction cause damage to not only the user, but to unknown family members or other third persons. *See* Idaho Code section 37-2739B (the Idaho Legislature has found and declared "that trafficking in controlled substances in the state of Idaho is a primary contributor to a societal problem that causes loss of life, personal injury and . . . exacts a tremendous toll on the citizens of this state."). Heroin cannot be said to be anything but harmful physically and psychologically when taken from a street dealer. There was no evidence for the district judge to analogize heroin usage to a medical

9

issue. Accordingly, the magistrate court did not err when it determined this crime was against persons rather than property.

        (d) <u>The maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and pattern of living.</u>

The magistrate court concluded this factor weighed in favor of waiving juvenile jurisdiction. The magistrate court noted Cota-Medina was less than three months short of turning eighteen when he committed the crime. The magistrate court also found Cota-Medina had dropped out of school, was not living with his parents, and rather was living with his nineteen-year-old cousin who assisted in the commission of the crime. The magistrate court noted that it was Cota-Medina who insisted the car be taken to a secure place to unload the drugs, which demonstrated "maturity, sophistication, and knowledge of the significant consequences of being caught." The court stated Cota-Medina's "level of maturity and pattern of living independently" weighed heavily in favor of waiver and that Cota-Medina's maturity is "more on par with a young adult who made the mistake of becoming involved in the drug business for all the typical reasons, than it is on par with an immature teenager making childish mistakes."

The district court agreed with the magistrate court that Cota-Medina had demonstrated a level of maturity more attuned to a young adult, but that this factor required "exceptionalism." The district court stated relevant inquiries would be, is "he a leader? Was he acting beyond his years in setting the deal up, in handling the details, etc.? Was he a criminal? Did he demonstrate . . . something in the vicinity of the wanton and malignant heart of the hardened criminal? Or . . . was [he] acting his age?" The district court stated that because Cota-Medina was the "low man in the crew" and just the driver, this factor was at most neutral, and did not support waiver.

The district court's analysis was in error. In *In re Doe*, we upheld the magistrate court's determination that a twelve-year-old boy's maturity level favored waiving juvenile jurisdiction. 147 Idaho at 252, 207 P.3d at 983. We stated, "the frequency in which [defendant] engaged in adult behaviors was evidence of his increased maturity level. [Defendant] had little supervision at home, frequently used drugs and alcohol, left his home without permission, and was often required to fend for himself." *Id.* Here, the magistrate court correctly found this factor favored waiving juvenile court jurisdiction. This case is like *In re Doe.* Here, as in *In re Doe*, Cota-Medina engaged in adult behaviors when he lived on his own and did not attend school. Also like in *In re Doe*, Cota-Medina consumed drugs, had no adult supervision, left his home without permission, and was required to fend for himself. Such activities are certainly not typical of a

10

seventeen-year-old. The magistrate court's findings supported its conclusion that this factor favored waiving juvenile jurisdiction. Thus, the district court erred when it found this factor was neutral and thus did not favor waiving juvenile jurisdiction.

(e) <u>The juvenile's record and previous history of contacts with the juvenile corrections system.</u>

Because Cota-Medina has no prior record or criminal history, the magistrate court found this factor weighed against waiving juvenile jurisdiction. The district court agreed with the magistrate court. Here, because Cota-Medina has no known criminal history, the district court was correct in determining this factor weighed against waiving juvenile jurisdiction.

(f) <u>The likelihood that the juvenile will develop competency and life skills to become a contributing member of the community by use of facilities and resources available to the court.</u>

The magistrate court concluded this factor was neutral, stating both the adult and juvenile systems can help develop competency and life skills for Cota-Medina. The magistrate court stated Cota-Medina will be past age eighteen prior to sentencing, and the court could not find any convincing reason the juvenile system would better rehabilitate Cota-Medina than the adult system. The district court agreed with the magistrate court's determination that this factor was neutral. Here, both systems will provide educational resources for Cota-Medina. There was no finding made that either system will provide superior resources or rehabilitation for Cota-Medina. Additionally, Cota-Medina will be over the age of eighteen at sentencing. While Cota-Medina argues that young people in the adult system are subject to abuse, there is nothing in the record to show Cota-Medina is especially susceptible for abuse. Accordingly, the district court correctly determined this factor was neutral.

In sum, the district court erred in reversing the magistrate court's order waiving juvenile jurisdiction over Cota-Medina. A review of the record shows that the magistrate court's decision to waive juvenile jurisdiction over Cota-Medina was not an abuse of discretion. The magistrate court ordered a full and complete investigation of the circumstances, and subsequently held an evidentiary hearing. The magistrate court then issued its findings of fact and conclusions of law which are supported by substantial and competent evidence. Cota-Medina does not argue that the magistrate court's findings are not supported by substantial and competent evidence. In analyzing the factors, the magistrate court recognized the issue as one of discretion and subsequently employed a legal analysis supported under the plain language of the statute, as

11

opposed to the district court who did not apply an analysis supported under the plain language of the statute. Thus, the magistrate court did not engage in an erroneous legal analysis. Accordingly, the district court erred when it reversed the magistrate court's order.

## IV.    CONCLUSION

For the reasons discussed above, the district court erred when it reversed the magistrate court's order waiving juvenile jurisdiction over Cota-Medina. Accordingly, this Court reverses the district court's order. The magistrate court's order is reinstated, and this case is remanded for proceedings consistent with this Court's opinion.

Justices BRODY, BEVAN, WALTERS pro tem and HUSKEY pro tem, **CONCUR.**